ISHEE, J.,
for the Court:
¶ 1. In May 2004, Mario Dockery was indicted for capital murder and conspiracy to commit robbery. Dockery pleaded guilty to a reduced charge of simple murder on March 13, 2007, in the DeSoto County Circuit Court. Following a sentencing hearing, the circuit court sentenced Dockery to life in the custody of the Mississippi Department of Corrections (MDOC). On January 26, 2011, he filed a motion for post-conviction relief (PCR) alleging his guilty plea was involuntary; his indictment was defective; and his attorneys provided ineffective assistance. The circuit court denied the PCR motion on April 5, 2011. A few weeks later, Dockery filed a second PCR motion to alter or amend the judgment alleging the same issues present in his first PCR motion. The second PCR motion was denied by the circuit court on May 3, 2011. Aggrieved, Dockery appeals the denial of his second PCR motion. Finding no error, we affirm.
FACTS
¶ 2. On December 30, 2003, eighty-three-year-old Anna Andrews was murdered in her home during the course of an attempted robbery by three individuals. It was not until Andrews’s daughter and granddaughter entered the residence that Andrews’s body was discovered duct-taped from her nose to her chest area. The record reflects Andrews begged for her life before being suffocated to death. On May 24, 2004, Dockery was indicted for capital murder and conspiracy to commit robbery.
¶ 3. Dockery indicated his desire to enter a guilty plea, and a plea hearing was set for March 19, 2007. At the plea hearing, the circuit judge thoroughly questioned Dockery as to his understanding of the charges against him. When repeatedly asked whether he understood the gravity and consequences of his guilty plea, Dockery answered affirmatively each time. The circuit judge also asked Dockery whether he was satisfied with the services of his legal counsel. Dockery again answered affirmatively and stated he did not have any complaints with his attorneys or any further questions for them.
¶ 4. The circuit judge then requested that Dockery explain to the court his mental capacity since the issue had been brought to the circuit court’s attention. Dockery responded that despite his being “slow,” he understood the implications of his guilty plea. Nonetheless, Dockery un *761 derwent a court-ordered psychiatric evaluation in Whitfield, Mississippi, at the Mississippi State Hospital (Whitfield). The stated goal of the evaluation was to determine if Dockery was mentally able to understand the nature of the proceedings against him, to establish his mental state at the time of the alleged crime, and to analyze whether he is legally mentally retarded. The results of the evaluation indicated Dockery is at least slightly mentally handicapped.
¶ 5. The evaluating doctor’s opinion explained that Dockery seemed to struggle with appreciating the nature of the evaluation and its use in court proceedings. However, the opinion went on to state Dockery’s mental deficiencies seemed to be exaggerated, as evidenced by evaluating physicians’ observations of Dockery’s skills at card games and board games, even ones involving strategy.
¶ 6. The opinion did not explicitly define whether Dockery was mentally able to understand the nature of the proceedings against him, his mental state at the time of the alleged crime, or if he is legally mentally retarded. However, the circuit judge took into account all information provided in the opinion. After reviewing the evaluating doctor’s findings, considering all open-court interactions and studying the record, the circuit court deemed Dockery competent to stand trial or enter a guilty plea. As such, Dockery’s guilty plea to simple murder was entered, and the circuit court sentenced him to life in the custody oftheMDOC.
¶ 7. In January 2011, Dockery filed a PCR motion. Therein, he argued: his guilty plea was involuntary; his indictment was defective; his counsel provided ineffective assistance; and his sentence is illegal. The circuit court denied the PCR motion in April 2011. Dockery then filed a motion to vacate or amend his judgment, which the circuit court properly treated as another PCR motion and denied it as being a successive writ and time-barred. Dockery now claims six issues on appeal: (1) his indictment was defective; (2) the circuit court did not have subject-matter jurisdiction to hear his case; (3) his life sentence is illegal; (4) his guilty plea was not freely and voluntarily entered; (5) his counsel provided ineffective assistance; and (6) his PCR motion was not procedurally barred.
DISCUSSION
I. Procedural Bar
¶ 8. In his brief, Dockery admits his latest PCR motion was a successive writ and time-barred pursuant to state law. In particular, Mississippi Code Annotated section 99-39-5 (Supp.2011) governs motions for post-conviction relief. Although Dockery asserts statutorily permissible grounds for requesting post-conviction relief under Mississippi Code Annotated section 99-39-5, the statute further provides that a prisoner has three years within which to request post-conviction relief. After that time, only certain cases are excepted from the procedural bar. Exceptions in the statute to the three-year statute of limitations are as follows:
That there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of [the petitioner’s] conviction or sentence or that [the petitioner] has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence; or [t]hat, even if the petitioner pled guilty or nolo contendere, or con *762 fessed or admitted to a crime, there exists biological evidence not tested, or, if previously tested, that can be subjected to additional DNA testing that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution. Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked. Likewise excepted are filings for post-conviction relief in capital cases which shall be made within one (1) year after conviction.
Miss.Code Ann. § 99 — 39—5(2)(a)(I)—(ii).
¶ 9. Dockery claims his prior arguments on appeal prove he was deprived of fundamental constitutional rights which negate the three-year bar. However, as discussed below, we find all of Dockery’s claims are without merit. Accordingly, this assertion is also without merit.
II. Sufficiency of the Indictment, Jurisdiction, and Legality of the Sentence
¶ 10. “The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court.” Nguyen v. State, 761 So.2d 873, 874 (¶ 3) (Miss.2000) (citation omitted). The law requires “[e]very material fact and essential ingredient of the offense — every essential element of the offense — must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment.” Copeland v. State, 423 So.2d 1333, 1336 (Miss.1982).
¶11. According to Dockery, since he was convicted of simple murder but indicted for capital murder, the indictment was insufficient because it failed to set forth the essential elements of the crime for which he was convicted. However, Dockery fails to state the elements he claims were missing from the indictment. As discussed further below, because simple murder is a lesser-included offense of capital murder, the elements of simple murder were inherently included within the crime of capital murder as reflected in Dockery’s indictment. Miss.Code Ann. § 97-13-19 (Rev.2006).
¶ 12. Dockery’s indictment states in pertinent part:
That ... MARIO DOCKERY ... on or about the 30th day of DECEMBER, in the year of our Lord 2003, ... did wil-fully, unlawfully!!,] and feloniously, and without authority of law, kill and murder Anna Andrews, a human being, while ... engaged in the commission of the crime of [r]obbery, with or without any design to effect the death of Anna Andrews, in direct violation of Section 97-3 — 19(2)(e), Mississippi Code 1972 Annotated, as amended....
Mississippi Code Annotated section 97-3-19 defines murder and capital murder, with the latter being an enhancement of murder by means of the commission of a felony listed in the statute, including robbery, during the time of the unlawful killing. Specifically, the statute defines murder, or commonly referred to as simple murder, as “the killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being; [or w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life....” Miss.Code Ann. § 97-3-19(l)(a)- *763 (b). When applied to the case at hand, capital murder is defined as “the killing of a human being without the authority of law ... [wjhen done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery ... or in any attempt to commit such felonies.” Miss.Code Ann. § 97 — 3—19(2)(e).
¶ 13. Furthermore, Rule 7.06 of the Uniform Rules of Circuit and County Court states an indictment “shall be a plain, concise[,] and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.” The Mississippi Supreme Court has spoken on the requirements of Rule 7.06, clarifying that if an indictment tracks the language of the crime charged, includes the essential fact, and fully informs the accused of the nature and cause of the charges, then the indictment is sufficient. Montana v. State, 822 So.2d 954, 963-64 (¶ 40) (Miss.2002).
¶ 14. Here, the elements of murder are included in the crime of capital murder and were so stated in the indictment. Additionally, having been fully questioned at the plea hearing regarding the crime itself, the nature of the charges, and the consequences of pleading guilty to the crime, Dockery was fully informed of the nature and cause of the charge of murder. Accordingly, we disagree with Dockery’s argument that his indictment was insufficient. This issue is without merit.
¶ 15. Dockery also asserts the circuit court lacked jurisdiction because the indictment was insufficient. However, as discussed above, we find that the indictment was sufficient. As such, his argument fails.
¶ 16. Likewise, Dockery’s claim that his life sentence is illegal is also tied to his assertion the indictment was defective. As such, this issue warrants no further discussion. However, we note Mississippi Code Annotated section 97-3-21 (Rev.2006) provides: “Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary.” (Emphasis added). Accordingly, by entering a plea of guilty to the charge of murder, Dockery consented to the only punishment allowed by the law — life imprisonment. As such, his claim of an illegal sentence is without merit.
III. Validity of Guilty Plea
¶ 17. When reviewing the volun-tariness of guilty plea, we “will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous.” Walton v. State, 16 So.3d 66, 70 (¶ 8) (Miss.Ct.App.2009) (quoting House v. State, 754 So.2d 1147, 1152 (¶ 24) (Miss.1999)). Additionally, “[t]he burden of proving that a guilty plea is involuntary is on the defendant and must be proven by [a] preponderance of the evidence.” House, 754 So.2d at 1152 (¶ 25) (citation omitted). “To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.” Burrough v. State, 9 So.3d 368, 373 (¶ 11) (Miss.2009).
¶ 18. In the next issue on appeal, Dock-ery again asserts the alleged insufficiency of the indictment rendered his guilty plea involuntarily and unintelligently entered. Dockery further claims the circuit court “did not have a factual basis to accept his plea of guilty.” As previously stated, we find the indictment was sufficient to charge Dockery with murder, and his *764 claims regarding the voluntariness of his guilty plea with regard to the indictment are without merit.
¶ 19. Furthermore, the transcript of Dockery’s plea hearing clearly shows the circuit judge fully questioned Dockery on his understanding of the charges against him and his knowledge of the consequences of pleading guilty. Dockery answered that he was aware of the charges of capital murder and attempted robbery brought against him and that he was aware of the reduced charge of simple murder resulting from his plea bargain. The circuit judge also discussed, at length, the performance of Dockery’s attorneys. He asked Dockery if he was satisfied with his counsel’s assistance and whether they had fully explained to him the rights he was relinquishing by pleading guilty. Dockery answered in the affirmative.
¶ 20. Intertwined with Dockery’s assertion that his guilty plea was not voluntarily or intelligently entered is his claim that he is mentally incapable of legally entering a guilty plea. Uniform Rules of Circuit and County Court 9.06 governs a defendant’s competence to stand trial. The same standard is applied when determining if a defendant is competent to enter a guilty plea. Smith v. State, 831 So.2d 590, 593 (¶ 11) (Miss.Ct.App.2002). Rule 9.06 reads:
If before or during trial the court ... has [a] reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
After the examination[,] the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
¶ 21. The record indicates Dockery’s mental fitness was brought to the attention of the circuit court, and the court ordered the performance of a mental evaluation for Dockery at Whitfield, as required by law. The forensic psychologist evaluating Dock-ery was charged with determining the following:
(a) [Wjhether or not [Dockery] has a factual as well as rational understanding of the nature and object of the legal proceedings against him, and has the ability reasonably to assist his attorney in the preparation of his defense; and
(b) to describe his mental state at he [sic] time of the alleged offense(s) with respect to his ability to know the difference between right and wrong in relation to his actions at that time; and
(c) whether, pursuant to the State case law and Atkins v. Virginia, the defendant is mentally retarded....
¶22. Dockery admitted to the circuit court and to the psychologist that he was “slow.” He explained he cannot read or write, but he finished high school. Dock-ery was evaluated for approximately one day at Whitfield. The evaluating psychologist reported Dockery “appeared, to have great difficulty ... understanding the nature of this evaluation and how information from this evaluation could be used in his legal situation.” The psychologist further stated Dockery “appears to have some genuine intellectual difficulties and appears to be exaggerating those difficulties at least somewhat.” In so concluding, the psychologist noted: “His apparent inability to understand the nature of this evaluation *765 does not appear consistent with his relative strengths at participating in card games and board games, even those involving some strategy, when he is observed in our general patient population.” Nonetheless, the psychologist declined to offer a definitive opinion regarding Dockery’s capacity to understand and knowingly, intelligently waive his right to a trial. In particular, the psychologist stated he could not opine as to Dockery’s understanding of his right not to incriminate himself.
¶ 23. However, at the plea hearing, the circuit judge specifically addressed Dock-ery’s potential mental incapacitation. He questioned Dockery as to his being “slow” and asked Dockery in numerous different lines of questioning if he understood the events taking place. After reviewing the psychologist’s evaluation from Whitfield and conversing with Dockery on several occasions in open court, the circuit judge stated:
Mr. Dockery appears to be alert and responsive. I do not detect any mental or emotional illness. He appears to be well advised of his rights by his lawyers, understands the consequences of offering his plea, and further, he has petitioned the Court in his own handwriting asking that I accept his plea of guilty.
¶ 24. The circuit court complied with the requirements of the law by having Dockery mentally evaluated and exploring Dockery’s claim of mental incapacitation through a mental evaluation and open-court questioning. Because evidence in the record supports the circuit court’s conclusion that Dockery was fit to enter a plea of guilty, we find no error.
¶ 25. Dockery next alleges the circuit court failed to provide a factual basis on which to accept his guilty plea. Having reviewed the record in its entirety, we disagree with Dockery’s claim. The circuit court held several hearings on Dockery’s case, including the plea hearing. At the plea hearing, the circuit court asked the State to explain to the court and to Dock-ery the evidence which would be shown to a jury if Dockery chose to go to trial. In doing so, the State provided ample facts to support Dockery’s involvement in the crime at hand. We see no error in the circuit court’s acceptance of Dockery’s guilty plea. This issue is without merit.
IV. Ineffective Assistance of Counsel
¶ 26. It has long been held that in order for a movant to prevail on an ineffective-assistance-of-counsel claim, he or she must “show by a preponderance of the evidence ‘(1) that counsel’s performance was deficient, and (2) but for the deficiencies, the trial court outcome would have been different.’ ” Jones v. State, 976 So.2d 407, 410-11 (¶ 6) (Miss.Ct.App.2008) (quoting Ward v. State, 914 So.2d 332, 336 (¶ 12) (Miss.Ct.App.2005)). Additionally, under Strideland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show “that counsel’s errors were so serious as to deprive the defendant of a fair trial.” Finally, “a presumption exists that the attorney’s conduct was adequate.” Hull v. State, 983 So.2d 331, 333-34 (¶ 11) (Miss.Ct.App.2007) (citing Bums v. State, 813 So.2d 668, 673 (¶ 14) (Miss.2001)).
¶ 27. Dockery claims his counsel was ineffective in assisting him with his decision to plead guilty to simple murder. But Dockery admits he understood if convicted of capital murder by a jury, he would have faced the death penalty and, therefore, pleading guilty to simple murder eliminated the possibility of the death penalty. However, he asserts that his alleged mental retardation would have prevented his execution and that his counsel should have advised him of such and encouraged him to go to trial. We disagree.
*766 ¶28. On appeal, Dockery admits in his pro se brief he could have faced the death penalty under a capital-murder conviction; instead, he received a life sentence with the possibility of parole or a suspension of his sentence by pleading guilty to simple murder. First, Dockery’s understanding of the consequences as shown in his brief coupled with the circuit court’s review of his claim of mental retardation indicate Dockery is not mentally retarded. Certainly his knowledge of the interconnections between the charges of capital murder and simple murder and each crime’s corresponding sentence show Dockery’s alleged mental incapacities do not prevent him from understanding the consequences of each charge. That alone is evidence enough to demonstrate Dock-ery is not legally mentally incapacitated. In our opinion, his counsel wisely advised him to remove the possibility of the death penalty as a sentence and to plead to a charge that would offer him a life sentence with the possibility of release in the distant future.
¶ 29. Second, the plea-hearing transcript contradicts Dockery’s allegation that his counsel was ineffective. Dockery was specifically asked if he was satisfied with the services rendered to him by his attorneys. He responded in the affirmative. He was asked if his counsel had been readily available to him throughout his court proceedings. He again responded in the affirmative. When asked if he had any complaints at all about their representation of him, he answered that he did not. Additionally, and again with regard to Dockery’s plea bargain, the negotiation of a plea bargain to eliminate the death penalty and allow Dockery the possibility of one day leaving prison cannot be considered ineffective. The record reflects Dockery was provided adequate legal representation and was not prejudiced or deprived of a constitutional right in any way. We find Dockery’s claim of ineffective assistance of counsel is without merit.
¶ 30. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.