MAXWELL, J.,
for the Court:
¶ 1. Barron Borden seeks post-conviction relief (PCR) from his guilty plea to capital murder and Alford plea to third-degree arson. He argues his pleas were not voluntarily made and that he is “legally innocent.” After review, we find Borden has not shown any constitutional violations, so he is not “legally innocent” of either offense. We also find he was thoroughly advised of his constitutional rights, the nature of the charge against him, and the consequences of his pleas. Because each plea was knowingly and intelligently made and supported by a factual basis, we reject his claim that his pleas were involuntary.
¶ 2. We further find his previously admitted satisfaction with his lawyer and concession that he had “no defense” to the charges undercuts his recent ineffective-assistance-of-counsel claim. He also waived any potential speedy-trial argu *821 ment he may have had by entering the two pleas. For these reasons, we affirm the denial of his PCR claim.
FACTS AND PROCEDURAL HISTORY
¶ 3. On October 8, 2008, after a drug deal went bad, Borden and his codefen-dant, Eddie Pugh,[1] kidnapped Kelsey McCoy and Rahman Mogilles. Borden and Pugh tied the two men up in New Orleans, Louisiana, then drove them to Jackson County, Mississippi, in Mogilles’s vehicle. Borden claimed that while en route to Mississippi, a fight broke out between he and Mogilles. The two supposedly wrestled over a gun, which went off, killing McCoy. After the shooting, Borden and Pugh set Mogilles’s vehicle on fire.
¶ 4. On May 15, 2009, Borden and Pugh were convicted of a variety of charges relating to these events after a jury trial in the United States District Court for the Southern District of Mississippi.[2] Specifically, Borden and Pugh were found guilty of conspiracy to commit kidnapping; two substantive counts of kidnapping relating to McCoy and Mogilles; felon in possession of a firearm; and possession of a firearm in connection with a crime of violence.[3] Both were sentenced to life imprisonment, plus five additional years.[4]
¶5. Pugh then proceeded to trial in Jackson County Circuit Court, where he was convicted of capital murder, aggravated assault, and third-degree arson. He received consecutive sentences of life for capital murder, twenty years for aggravated assault, and three years for third-degree arson.[5]
¶ 6. On January 6, 2011, Borden elected to waive trial on his state charges and enter a plea of guilty to capital murder and an Alford[6] (best interest) plea to third-degree arson in the Jackson County Circuit Court. The judge accepted his pleas and sentenced him to life without parole for capital murder and three years on the arson charge. Borden later filed a PCR motion, which the circuit court denied. Borden now appeals.
DISCUSSION
¶ 7. In considering the denial of a PCR motion, “we review the trial court’s findings of fact for clear error and its determinations of law de novo.” Wilkerson v. State, 89 So.3d 610, 613 (¶ 7) (Miss.Ct.App.2011). The burden is on the PCR movant to show he or she is entitled to relief by a preponderance of the evidence. Id. We affirm dismissals or denials of PCR motions when the movant fails to demonstrate “a claim procedurally alive substantially showing the denial of a state or federal right.” Id. at 614 (¶ 7).
I. Ineffective Assistance of Counsel
¶ 8. Though Borden had already been convicted of federal charges, he argues his attorney was ineffective in advising him to plead guilty in state court because he was “legally innocent.” While he does not mention exactly why he was legally innocent, it is important to note that there is a difference between claims of “actual innocence” and “legal innocence.”
*822 ¶9. In the context of post-conviction proceedings, the United States Supreme Court has explained that actual innocence means “factual innocence” — that the person did not commit the crime. Sawyer v. Whitley, 505 U.S. 338, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). But legal innocence is a distinct concept that arises in circumstances when a constitutional violation, by itself, requires reversal. Id. at 339-40, 112 S.Ct. 2514. Since Borden insists he is legally (not factually) innocent, he apparently is not arguing that he did not commit the crime. So we focus instead on his constitutional claims, his first of which attacks his state court counsel.
¶.10. To proye ineffective assistance of counsel, Borden must show: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Borden to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052.
¶ 11. Borden suggests his attorney was ineffective for failing to conduct a reasonable investigation before advising him to plead guilty and not raising the defense that he was “legally innocent.” But Borden neither specifies how he was legally innocent nor points to a valid constitutional violation that, if raised before trial, would have resulted in a different outcome. So there is no viable legal-innocence claim.
¶ 12. Perhaps Borden misunderstands the concept, of legal innocence— which typically arises in the post-conviction setting when it is alleged and discovered that a constitutional violation or error occurred that, standing alone, requires reversal. However, to the extent he claims a general deficiency in his representation, we point out that when counseling a client on a guilty plea, a lawyer’s advise need only be reasonably competent, not perfect. Hill v. State, 60 So.3d 824, 827 (¶ 5) (Miss.Ct.App.2011) (citation omitted). What is paramount to the representation is that the lawyer’s advice be sufficient to allow the defendant to make an informed and conscious choice about whether to plead guilty. Id. (citation omitted). And here, we must presume it was, since Borden offers nothing to show his attorney’s advice to plead guilty was unsound or falls outside “the wide range of reasonable professional assistance.” Id. Borden’s argument is also undermined by the record, which contradicts his newfound dissatisfaction with his attorney.
¶ 13. At Borden’s guilty-plea hearing, he swore under oath that he was satisfied with his attorney. When asked by the court if his lawyer advised him in a manner consistent with his best interests, Borden told the judge, “Yes, your Honor. They established that there is no — yeah, that there is no defense.” Borden was even asked whether he personally believed he had a defense to the charges, and answered — ‘You mean to the evidence? No.”
¶ 14. We have long held that “solemn declarations in open court carry a strong presumption of verity.” Id. at 828 (¶ 12). And' based on the colloquy, we find Borden should be held to his earlier sworn statements about his satisfaction with his attorney, particularly when he has met neither *823 Strickland prong. We thus find his ineffective-assistance-of-counsel claim fails.
II. Validity of Guilty Plea
¶ 15. Borden next argues his guilty plea was involuntary, again citing his legal innocence. This is a constitutional claim for which the defendant bears the burden of proof. Dockery v. State, 96 So.3d 759, 763 (¶ 17) (Miss.Ct.App.2012). When a trial judge has found a defendant’s guilty plea is voluntary, we will only set aside those findings if they are clearly erroneous. Id.

A. Guilty Plea

¶ 16. A guilty plea is binding when it is voluntary, knowing, and intelligent. Hill, 60 So.3d at 828 (¶ 11). “To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.” Dockery, 96 So.3d at 763 (¶ 17) (quoting Burrough v. State, 9 So.3d 368, 373 (¶ 11) (Miss.2009)). The defendant must also be advised that a guilty plea waives various constitutional rights. Hill, 60 So.3d at 828 (¶ 11). The most significant evidence of the voluntariness of a plea is “[t]he thoroughness with which the defendant was interrogated by the lower court.” Id. at (¶ 12) (citation omitted).
¶ 17. Our review of Borden’s plea colloquy shows that he was vigorously and thoroughly questioned by the circuit court judge. During the hearing, Borden was asked if he understood the nature of the charges, and answered, “Yes, Your Hon- or.” He also maintained that he had fully discussed with his attorneys all facts and circumstances surrounding both charged offenses, including any potential defenses. When asked if he believed he had any defenses, Borden admitted he did not. He represented to the judge that no promises, threats, or force was used against him to get him to plead guilty. And the circuit judge and counsel informed him of the rights he was waiving by pleading guilty, including his right to be tried by a jury; to confront witnesses against him; to present evidence and call witnesses on his behalf; to appeal the issue of his guilt; to receive a speedy trial; and to assert other constitutional-rights violations. He was also advised of the potential sentence he faced. So the record refutes his involuntariness claim.

B. Factual Basis

¶ 18. To the extent Borden challenges the factual basis, we find it also sufficiently supports his pleas. See Williams v. State, 110 So.3d 840, 843 (¶ 17) (Miss.Ct.App.2013). There are a variety of ways to establish a factual basis, including “a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant.” Id. (quoting Turner v. State, 864 So.2d 288, 292 (¶ 17) (Miss.Ct.App. 2003) (citing Corley v. State, 585 So.2d 765, 767 (Miss.1991))). “And ‘if sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea.’” Id. (quoting Drake v. State, 823 So.2d 593, 594 (¶ 6) (Miss.Ct.App.2002)). We look to the entire record when evaluating the factual basis. Id.
¶ 19. Here, we find the factual basis for the capital-murder charge was established in at least two different ways. First, the indictment was read to Borden during his plea hearing. And Borden acknowledged the charged crimes were the ones to which he was entering pleas. Borden also admitted he was guilty of capital murder. Second, when asked to state in his own words why he was guilty of capital *824 murder, Borden gave a detailed account of events leading to the shooting and described the shooting itself.
¶ 20. Borden explained that everything started with a failed drug deal, which resulted in a kidnapping. When the deal unraveled, Borden forced Mogilles to tie up McCoy. Borden then tied up Mogilles. At this point, Borden forced both men into Mogilles’s vehicle, where they remained bound, while Pugh and Borden drove them from New Orleans to the Mississippi Gulf Coast. Borden admitted that Mogilles and McCoy were held against their will. So there was obviously a kidnapping, which was the underlying charge for the capital murder. See Miss.Code Ann. § 97-3-19(2)(e) (Rev.2006).[7]
¶ 21. As to the shooting, Borden claimed he and Mogilles wrestled over a gun, which went off, shooting McCoy in the head. While Borden maintained McCoy’s death resulted from an accidental killing, the nature of the shooting does not negate application of the felony-murder doctrine. Under section 97-3-19(2)(e), the State need not “prove the elements of murder, only that a killing took place while the accused was ‘engaged in the commission’ of [an] enumerated felon[y,]” — one of which is kidnapping. Layne v. State, 542 So.2d 237, 243 (Miss.1989). And even an accidental shooting qualifies as support for a capital-murder conviction if it occurred in the course of a kidnapping or other crime specified in section 97-3-19(2)(e). See Layne, 542 So.2d at 243 (applying a Texas court’s rationale that the purpose behind the felony-murder rule was to deter even accidental killings in the commission of certain felonies by holding those guilty strictly liable for even accidental killings); see also Beale v. State, 2 So.3d 693, 698 (¶ 12) (Miss.Ct.App.2008).
¶ 22. Reading the record as a whole, we find the recitation of the indictment, Borden’s admission of guilt, and his account of the kidnapping and shooting that resulted in McCoy’s death provide a sufficient factual basis supporting the capital-murder plea.

C. Arson

¶ 23. While Borden actually pled guilty to the capital-murder charge, he entered an Alford or best-interest plea on the third-degree-arson count. An Alford plea allows a defendant to maintain his innocence but concede the State had sufficient evidence to convict him. See Alford, 400 U.S. at 37-38, 91 S.Ct. 160. Because Borden agreed the State had sufficient evidence to convict him of arson at trial and felt it was in his best interest to plead guilty, we likewise find his Alford plea to arson is sufficiently supported.
III. Speedy-Trial Violation
¶ 24. Borden also insists he was denied his right to a speedy trial. But during his plea colloquy, the circuit judge advised him that by pleading guilty, he would forfeit certain rights, including the right to a speedy trial. Because “a valid guilty plea operates as a waiver of all non-jurisdictional rights or defects which are incident to trial,” including the constitutional right to a speedy trial, Anderson v. *825 State, 577 So.2d 390, 391-92 (Miss.1991), we find Borden forfeited any potential speedy-trial issues.
IV. Content of Record on Appeal
¶ 25. Borden next claims the circuit court erroneously denied his request to amend and supplement the record with affidavits from family members attesting Borden was convinced to plead guilty to avoid a possible death sentence. We disagree.
¶ 26. Rule 10(f) of the Mississippi Rules of Appellate Procedure — which addresses the content of the record on appeal — instructs that the rule shall not be construed “as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.” (Emphasis added).
¶ 27. Because this testimony was not before the trial court, and the affidavits were not even created until a month after the PCR hearing, we find they are not necessary to convey a fair, accurate, and complete account of what transpired below. So Rule 10(f) supports denying supplementation of the record.
¶ 28. We affirm.
¶ 29. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. See Pugh v. State, 101 So.3d 682 (Miss.Ct.App.2012).

. See United States v. Pugh, 2009 WL 2928757, *1 (S.D.Miss.2009).

. See id.

. See United States v. Whitmore, 386 Fed.Appx. 464, 468 (5th Cir.2010).

. See Pugh, 101 So.3d at 685 (¶ 1).

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. Under Mississippi Code Annotated section 97-3-19(2)(e):
The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
[[Image here]]
When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies [.]