# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00961-COA

KENNETH BLAKE WATKINS A/K/A KENNETH B. WATKINS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT:                 05/16/2013
TRIAL JUDGE:                      HON. ROBERT P. CHAMBERLIN
COURT FROM WHICH APPEALED:        DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:           JOHN A. FERRELL
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                  BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:               CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:          MOTION FOR POST-CONVICTION RELIEF
                                  DENIED
DISPOSITION:                      AFFIRMED - 11/04/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., MAXWELL AND JAMES, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.    Kenneth Watkins argues the circuit court wrongly denied him post-conviction relief (PCR) from his 2010 guilty pleas to sexual battery and felony child abuse. Watkins entered these guilty pleas in the midst of his criminal trial for raping a sixteen-month-old girl. While Watkins told the judge at his plea hearing that he was voluntarily pleading guilty and was satisfied with his trial lawyer, he now claims his attorney and family coerced him to plead guilty to avoid a life sentence. Watkins also now insists he has new evidence that another man was present in the young child's home when Watkins supposedly assaulted her.

¶2.    The circuit judge granted Watkins an evidentiary hearing on his PCR motion.  During the hearing, Watkins's trial attorney disputed the coercion claim.  He testified that as the State's graphic evidence unfolded at trial, the possibility of an acquittal looked bleak.  Both Watkins's family and his lawyer felt guilty pleas to the charges were the best course to minimize his potential sentencing exposure.  So when offered a capped plea deal, Watkins's attorney recommended he plead guilty.  As to the supposed newly discovered evidence, the victim's mother denied ever saying another man was present when Watkins allegedly assaulted her daughter.

¶3.    Based on this testimony—which the circuit judge found credible—and Watkins's representations during his guilty plea, the judge found Watkins failed to show his pleas were involuntary or that newly discovered evidence required vacating his guilty pleas.  After review, we find the trial judge did not clearly err in making these determinations.  We thus affirm the denial of Watkins's PCR motion.

## Facts and Procedural History

¶4.    In January 2008, seventeen-year-old Watkins lived in a house in Walls, Mississippi, with his girlfriend, Tiffany,[1] and her sixteen-month-old daughter from a prior relationship, Ann.  Two other roommates also lived in the house—Mary and Mary's daughter.

¶5.    On January 25, 2008, Tiffany had a morning community-college class, so Watkins stayed with Ann.  During this time, Watkins was the only person with Ann.  When Tiffany

---

[1]  Because this case involves allegations of child abuse, the names of the victim, her family, and her roommates have been changed to protect her identity.

2

returned home, she took a nap, and Watkins left to visit his mother in Holly Springs, Mississippi.

¶6. Later that evening, Tiffany found blood in Ann's diaper, so she and Mary took Ann to a hospital. Ann also had bruises, scratches, and abrasions on her body. Her genital area was also damaged. These injuries raised suspicions about possible sexual assault and child abuse. A doctor and nurse practitioner examined Ann and confirmed she had very recently been sexually assaulted.

¶7. Watkins was later charged with one count of sexual battery[2] and one count of felony child abuse.[3] His case proceeded to trial in DeSoto County Circuit Court. The State put on its case, consisting of detailed testimony and evidence of the young child's injuries. The disturbing evidence brought some jurors to tears. The State approached Watkins's trial attorney, Kent Smith—who until then had been set on trying the case—and mentioned a plea deal. Smith, having sized up the way the State's case was going for his client, felt Watkins should plead guilty. Smith relayed the twenty-year recommendation to both Watkins and his

---

[2] Under Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014), "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." While any person convicted of sexual battery under this section who is eighteen years of age or older shall be sentenced to no less than twenty years, "[e]very person . . . convicted of sexual battery who is thirteen (13) years of age or older but under eighteen (18) years of age shall be sentenced to such imprisonment . . . as the court, in its discretion, may determine." Miss. Code Ann. § 97-3-101(4) (Rev. 2014). Because Watkins was under the age of eighteen at the time of the sexual battery, the court had discretion in the length of the sentence.

[3] *See* Miss. Code Ann. § 97-5-39 (Rev. 2014).

family. And he counseled them about what he felt was a real possibility of a life sentence if Watkins was convicted. Watkins's family also concluded he should plead guilty and cap his sentencing exposure.

¶8. The next day, Watkins told Smith he had made up his mind to plead guilty. So Smith filed a petition for Watkins to enter guilty pleas to sexual battery and felony child abuse. The court thoroughly questioned Watkins to determine if his pleas were indeed voluntary. And Watkins agreed they were. He also maintained he was satisfied with his lawyer's efforts. The judge found there was a factual basis supporting the guilty pleas and accepted them. He also accepted the State's plea recommendation and sentenced Watkins to twenty years' imprisonment for sexual battery. On the felony child-abuse count, the judge sentenced Watkins to ten consecutive years of post-release supervision instead of a prison term.

¶9. Watkins later filed a PCR motion. He primarily claimed his pleas were involuntary and newly discovered evidence required both pleas be vacated. After hearing from witnesses during a PCR hearing, the circuit judge denied Watkins's petition. Watkins appealed.

**Discussion**

¶10. In considering the denial of a PCR motion, "we review the trial court's findings of fact for clear error and its determinations of law de novo." *Wilkerson v. State*, 89 So. 3d 610, 613 (¶7) (Miss. Ct. App. 2011). The PCR movant has the burden of showing he is entitled to relief by a preponderance of the evidence. *Id*.

**I.     Validity of Guilty Plea**

     *A.     Voluntariness of Plea*

4

¶11. Watkins's first argument is that his pleas were involuntary. He maintains he only pled guilty because he was pressured to do so by his attorney and family. When a PCR movant tries to get out of an already entered guilty plea, it is the movant, not the State, who bears the burden of proving by a preponderance of evidence that the guilty plea was involuntary. *See House v. State*, 754 So. 2d 1147, 1152 (¶25) (Miss. 1999); *see also* Miss. Code Ann. § 99-39-23(7) (Supp. 2014). And here, after granting an evidentiary hearing and listening to the State's and Watkins's witnesses, the trial judge found he failed to meet this burden.

### B. *Determining if a Guilty Plea Is Voluntary*

¶12. For Watkins's guilty pleas to be binding, they had to be voluntary, knowing, and intelligent. *Hill v. State*, 60 So. 3d 824, 828 (¶11) (Miss. Ct. App. 2011). "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Dockery v. State*, 96 So. 3d 759, 763 (¶17) (Miss. Ct. App. 2012) (quoting *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. 2009)). The defendant must also be advised that a guilty plea waives various constitutional rights. *Hill*, 60 So. 3d at 828 (¶11). But the most significant indicator of the voluntariness of a defendant's guilty plea is "[t]he thoroughness with which the defendant was interrogated by the lower court." *Id*. at (¶12) (citation omitted).

¶13. The record shows the circuit judge thoroughly questioned Watkins during the plea hearing. When asked about the plea petition, he said he understood it and the nature of the charges. He was also aware of the potential sentences he faced. And he admitted he was

5

pleading guilty because he committed both crimes. The circuit judge carefully informed him of the various rights he was waiving by pleading guilty.[4] And perhaps most damaging to his pointed PCR claim that his arm was twisted into pleading guilty was Watkins's sworn representations to the judge that no force, promises, or threats were used to get him to plead guilty. So the record certainly cuts against his involuntariness claim.

### C. *Watkins's Lawyer Was Correct that He Could Get Life*

¶14.    Watkins also claimed he was told by his lawyer that the judge had already made up his mind to sentence him to life if he rejected a plea deal. This was essentially the testimony of Watkins, his grandmother, and cousin. But that is not what Watkins's mother and sister remembered. Both his mother and sister testified that Smith advised Watkins that if he did not take the plea, he *could* get life in prison—which was indeed a correct statement of law by his trial counsel. Smith too remembered telling Watkins and his family that he *could* face life imprisonment. But he disagreed that he represented to them that the judge's mind was already made up, and if he rejected a capped plea, he would get life. After sifting this competing evidence, the circuit judge found Smith and Watkins's mother and sister were more credible than the other witnesses. Because the circuit judge is the "sole authority for determining credibility of the witnesses," we defer to his credibility determinations. *Loden*

---

    [4] Among these rights, which Watkins acknowledged he understood and was waiving, were his rights to be tried by a jury, to have counsel at all stages of a trial, to be presumed innocent, to confront witnesses against him, to present evidence and call witnesses on his behalf, to receive a speedy trial, to appeal the issue of his guilt, and to assert other constitutional-rights violations.

*v. State,* 971 So. 2d 548, 573 (¶59) (Miss. 2007) (quoting *Mullins v. Ratcliff*, 515 So. 2d 1183, 1189 (Miss. 1987)).

### D. Pressure to Plead Guilty

¶15. Though Smith was hired to try the case after another attorney withdrew, we point out that once a plea offer was made, Smith had a general duty to communicate the favorable plea offer to Watkins. *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). And he followed through with this obligation. As Smith put it at the PCR hearing, while he intended to try the case, once the State mentioned a deal, he "felt compelled to . . . convey the offer," which he ultimately recommended Watkins take because of the way the trial was going. The fact Watkins felt some pressure to plead guilty after discussing the offer with Smith is insufficient to render a guilty plea involuntary. *See Brasington v. State*, 760 So. 2d 18, 26 (¶38) (Miss. Ct. App. 1999) ("A lawyer's 'persuading' a defendant to plead guilty by 'every means at his disposal' does not render the plea involuntary if that persuasion does not result from fear, violence, deception, or improper inducements."); *see also Mayhan v. State*, 26 So. 3d 1072, 1076 (¶13) (Miss. Ct. App. 2009) ("[T]he fact that a defendant pled guilty because he feared a harsher sentence otherwise, does not render the plea involuntary."). Had the circuit judge found evidence of overreaching, deception, or improper inducements on Watkins's attorney's or family's part, we would likely agree with Watkins's claim. But the circuit judge did not, and neither does this court. Thus, we cannot tamper with the judge's finding that Watkins failed in his burden of proving his plea was involuntary.

### E. Factual Basis

7

¶16. We also find there was a sufficient factual basis for his pleas. A factual basis can be established by "a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, [or] an actual admission by the defendant." *Borden v. State*, 122 So. 3d 818, 823 (¶18) (Miss. Ct. App. 2013) (quoting *Williams v. State*, 110 So. 3d 840, 843 (¶17) (Miss. Ct. App. 2013)). An indictment can also "be used as the sole source of the factual basis for a guilty plea" if sufficiently specific. *Id*. (quoting *Drake v. State*, 823 So. 2d 593, 594 (¶6) (Miss. Ct. App. 2002)).

¶17. When Watkins opted to plead guilty after the State rested, the judge told him the evidence and testimony already presented would be incorporated into the plea. On top of this, the indictment[5] was read to Watkins during his plea hearing, which correctly and specifically charged both crimes. The prosecutor also summarized the evidence in its case-in-chief—including DNA-related testimony that Watkins's semen was found in the child's diaper.[6] And when asked by the judge if he was in fact guilty of the crimes, Watkins said

---

[5] The indictment charged that on January 25, 2008, Watkins did willfully, unlawfully, and feloniously engage in sexual penetration with Ann, who was at the time a child under the age of fourteen years, and that Watkins was at that time at least twenty-four months or more older than Ann, and that he engaged in sexual penetration with her by inserting an object into the vagina of Ann. As to count II, on January 25, 2008, Watkins did willfully, unlawfully, and feloniously whip, strike, or otherwise abuse or mutilate Ann, who is a child sixteen months of age, in a manner to cause serious bodily harm.

[6] The State presented testimony from Kristy (Ann's grandmother); Mary (Tiffany's roommate); Dr. Rosa Gomez (an emergency-room doctor at Baptist Hospital in DeSoto County); Candace Coleman (a detective, who interviewed witnesses and collected the bloody diaper); Joseph Heffin (a forensic analyst from the crime lab); Kathryn Moyse (a Scales Bio Lab employee, who tested the diaper to compare DNA samples and confirmed that the sperm found in the semen in the diaper matched Watkins's); Julie Atkeison (a nurse, who examined

8

"yes, sir."

¶18. While the indictment itself was sufficient to establish a factual basis, the remaining statement of the prosecutor, incorporated witness testimony, and Watkins's admissions were more than sufficient to show a factual basis supporting his guilty pleas.

## II. Newly Discovered Evidence

¶19. Watkins also suggests newly discovered evidence requires his guilty pleas be vacated. The State's case hinged on him being the only man with the young child when she was raped, and Watkins now claims he has new evidence of another male present at the house that day—evidence that only came to light after he pled guilty.

¶20. Newly discovered evidence is "evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." Miss. Code Ann. § 99-39-23(6) (Supp. 2014). To prevail on a newly-discovered-evidence claim, Watkins had to show "evidence that is both newly discovered and material to the outcome of his convictions." *McCoy v. State*, 111 So. 3d 673, 676 (¶8) (Miss. Ct. App. 2012).

¶21. The source of the purported newly discovered evidence was Mary, who was a roommate of Watkins when the assault happened, and the victim's mother, Tiffany. At the PCR hearing, Mary testified that after Watkins had already pled guilty, Tiffany told her

the victim and photographed her injuries); and Dr. Karen Lakin (an expert testifying in the field of child sexual abuse).

9

another male was at the home that day. But Tiffany was also called at the PCR hearing. And she took the stand and testified she did not tell Mary another man was in the home and had no idea why Mary would say that.

¶22. When asked if anyone told her another male was present or if she had knowledge of another male being present, Tiffany said no. As the circuit judge noted, there was simply "no firsthand testimony that anyone actually saw another person at the residence or that his DNA was found on the scene" on the day of the crime. Thus we find no error in the judge rejecting Watkins's "newly discovered evidence" claim.

## Conclusion

¶23. Because we cannot say the circuit judge clearly erred in finding Watkins failed to meet his burden to prove entitlement to post-conviction relief, we affirm the denial of his PCR claim.

¶24. **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.**