# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00661-COA

PAUL NORRIS A/K/A PAUL G. NORRIS A/K/A            APPELLANT
PAUL GABRIEL NORRIS

v.

STATE OF MISSISSIPPI                                        APPELLEE

DATE OF JUDGMENT:             03/22/2013
TRIAL JUDGE:                  HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:    FORREST COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      ROSS R. BARNETT JR.
                              JAMES F. NOBLE III
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: LADONNA C. HOLLAND
NATURE OF THE CASE:           CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:      DENIED MOTION FOR POST-
                              CONVICTION RELIEF
DISPOSITION:                  AFFIRMED - 09/16/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND MAXWELL, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.    Mississippi's post-conviction-relief (PCR) statute is clear—it requires a petitioner

who lodges a post-conviction challenge to give "[a] concise statement of the claims or

grounds upon which the motion is based."[1]  Petitioners do not have an unfettered right to

present claims not alleged in their PCR motions.[2]  But here, that is precisely what Norris is

---

[1] Miss. Code Ann. § 99-39-9 (Supp. 2013).

[2] *Brandon v. State*, 108 So. 3d 999, 1007 (¶25) (Miss. Ct. App. 2013).

trying to do.

¶2.     Norris, who had been convicted of four separate felonies—robbery, attempted robbery, and two counts of felony eluding—filed a PCR motion challenging the computation and proportionality of his separate sentences. His motion did not mention the voluntariness of any of his guilty pleas. But at his PCR hearing, Norris argued for the first time that his guilty pleas to the two felony-eluding convictions were involuntary. After hearing argument from Norris's attorney and the State, the circuit judge denied Norris's PCR motion.

¶3.     On appeal, we find Norris's PCR motion did not plead a challenge to the voluntariness of his guilty pleas. So this issue was not properly before the circuit judge. Still, even assuming his PCR motion was implicitly amended to include an attack on his guilty pleas, we find the circuit judge did not clearly err in finding Norris's felony-eluding pleas were voluntary. We therefore affirm.

**Background**

¶4.     Shortly after serving a stint in prison for attempted robbery and robbery, Norris had another run-in with the law. On January 22, 2009, a Hattiesburg, Mississippi police officer tried to question Norris about a home invasion he was suspected to have committed. But Norris, who was on probation for robbery and attempted robbery, fled from the officer. This flight formed the basis for his first felony-eluding guilty plea.

¶5.     On August 29, 2009, Norris again eluded police—this time a Petal, Mississippi police officer who tried to stop Norris after he made an illegal U-turn. Norris ignored the officer's lights and sirens and was able to get away. This episode formed the basis of Norris's second

2

guilty plea to felony eluding.

## I.    *Felony-Eluding Guilty Pleas*

¶6.    A few months later, Norris was taken into custody on a warrant on November 9, 2009. When arrested, he was under indictment and awaiting trial for simple assault of a peace officer. Because Norris had previously been convicted of attempted robbery and robbery, he faced life imprisonment as a habitual offender on this assault count. *See* Miss. Code Ann. § 99-19-83 (Rev. 2007).[3]

¶7.    While Norris was in custody, his attorney worked out a plea deal. It called for Norris to plead guilty to an information charging two counts of eluding a law enforcement officer as a habitual offender under the lesser enhancement in Mississippi Code Annotated section 99-19-81 (Rev. 2007).[4] So instead of mandatory life imprisonment for assault, under the

---

[3] Under section 99-19-83:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

[4] Under section 99-19-81:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

3

proposed plea agreement Norris would serve a much lesser punishment—a mandatory five years on each eluding count.

¶8. On November 10, 2009, Norris was brought before the court to enter his guilty pleas. The State proffered facts supporting both guilty pleas, and Norris admitted he was guilty of both fleeing counts. He also admitted he had previously been convicted of robbery and attempted robbery. The court accepted his guilty pleas and sentenced Norris as a habitual offender under section 99-19-81 to five years' imprisonment on each felony-eluding count. The sentences were ordered to run consecutively.

¶9. A week later, on November 17, 2009, the court held a revocation hearing. Because Norris had pled guilty to two felonies while on supervised release, the court revoked five years of his supervised release on both his prior robbery and attempted-robbery sentences.

## II. Norris's PCR Motion

¶10. On March 29, 2011, Norris's attorney filed what he titled "Petition for Clarification and Motion for Post Conviction Relief." The motion sought clarification on whether Norris's two consecutive five-year sentences for eluding law enforcement should run consecutively to the two concurrent five-year sentences Norris had been ordered to serve when his supervised release on the robbery convictions was revoked. If this was so, he felt his sentences, which totaled fifteen years, were disproportionate. He alternatively asked the court to go back and order each of the three sentences to run concurrently—for a total of "5 years to serve." Norris hoped for "some leniency" since he claimed he was "under the influence of drugs and/or alcohol" when he pled guilty. And he closed by "request[ing] the Court for an Order reducing his sentence" and for concurrent, instead of consecutive,

4

sentences.

### III. PCR Hearing

¶11. The court granted Norris an evidentiary hearing on his PCR motion. And during the May 27, 2011 hearing, his lawyer initially argued about the sentence computations. But his attorney's focus soon shifted to a new, distinct claim—one not raised in Norris's PCR motion.

¶12. While Norris's attorney had not listed a voluntariness claim as a ground for post-conviction relief in the PCR motion, during the hearing he suggested to the judge—for the first time—that Norris wanted out of his plea agreement. As Norris's lawyer put it, there was a "question whether or not" Norris was under the influence of drugs and knowingly and voluntarily entered his pleas. His attorney was candid with the judge that Norris had openly admitted his guilt and had earlier told the judge he knew what he was doing when he pled guilty. And Norris's lawyer also recounted that Norris's father had similarly previously told the court that he believed Norris was voluntarily pleading guilty. But as support for his new voluntariness argument, Norris's counsel pointed to Norris's prior silence when asked at the plea hearing if he was under the influence of drugs. He also reminded the judge that Norris claimed he had swallowed some dope the day before his plea, when he was pulled over by police.

¶13. Despite the fact that Norris bore the burden of proving he was entitled to post-conviction relief, his attorney offered no evidence during the PCR hearing to support his argument that Norris could not have voluntarily pled guilty. Instead, Norris's counsel merely argued the guilty pleas should be set aside. Neither Norris nor any other witnesses were

5

called to testify about Norris's claimed impairment. Instead, his attorney proffered that, while Norris's father believed Norris knew what he was doing by pleading guilty, Norris's mother thought her son misunderstood the ramifications of his guilty plea and would claim the hospital lost his drug-test results.

¶14.    In response, the State insisted post-conviction relief was not available to Norris. It reminded the court that when pleading guilty Norris had sworn he understood the charges and knew what he was doing. The court took the matter under advisement, and on March 22, 2013, entered an "Order Clarifying Sentence & Denying Petitioner's Request for Post Conviction Relief."

¶15.    In denying Norris's PCR motion, the court expressly found Norris had knowingly and voluntarily entered his guilty plea. The judge also found his two concurrent five-year sentences from the revocations ran consecutively to each of the two consecutive five-year eluding sentences. Thus, Norris had to serve fifteen years. Norris appealed.

**Standard of Review**

¶16.    When there is an appeal from the denial of post-conviction relief, we review a trial court's fact findings under the clearly erroneous standard and its determinations of law de novo. *Wilkerson v. State*, 89 So. 3d 610, 613 (¶7) (Miss. Ct. App. 2011). The PCR movant bears the burden of proving by a preponderance of the evidence that he or she is entitled to relief. *Id.* We will only reverse a trial judge's denial of post-conviction relief if it was clearly erroneous. *Smith v. State*, 806 So. 2d 1148, 1150 (¶3) (Miss. Ct. App. 2002).

**Discussion**

*I.      Norris Failed to Plead His Involuntariness Claim*

6

¶17. Unlike his PCR motion, which focused solely on his sentence calculations, every page of Norris's appellate brief is spent talking about the voluntariness of his guilty pleas—something he did not raise in his PCR motion.

¶18. Under Mississippi's PCR statute, a petitioner who makes a post-conviction challenge must give "[a] concise statement of the claims or grounds upon which the motion is based." Miss. Code Ann. § 99-39-9 (Supp. 2013). A petitioner has no absolute right to present claims not alleged in a PCR motion. *Brandon v. State*, 108 So. 3d 999, 1007 (¶25) (Miss. Ct. App. 2013). Here, Norris's PCR motion did not contain any claim that his plea was involuntary. Nor did it even mention he was trying to vacate his guilty pleas. Instead, his PCR motion focused solely on his sentences. We thus find his challenge to the voluntariness of his guilty pleas, which he asserted for the first time during the evidentiary hearing on his PCR motion, was not properly before the court.

## II. *Norris Failed to Prove His Plea Was Involuntary*

¶19. While Norris's voluntariness challenge was not pled, we do note the State failed to object to Norris seeking this unrequested relief. But even if this failure or acquiescence on the State's part resulted in the PCR motion being amended and the voluntariness claim being tried by implied consent, we cannot say the circuit judge clearly erred in finding Norris's guilty plea was voluntary.

¶20. When a PCR petitioner, like Norris, tries to back out of an already-entered guilty plea, it is the petitioner, not the State, who bears the burden of proving by a preponderance of evidence that the guilty plea was involuntary. *See House v. State*, 754 So. 2d 1147, 1152 (¶25) (Miss. 1999); *see also* Miss. Code Ann. § 99-39-23(7) (Supp. 2013). And here, after

7

granting an evidentiary hearing and listening to Norris's argument, the trial judge found he failed to meet this burden. After review, we see no clear error in the trial judge's decision that Norris's plea was voluntary.

### A. Determining When a Plea Is Voluntary

¶21. For Norris's guilty pleas to be binding, they had to be voluntary, knowing, and intelligent. *Hill v. State*, 60 So. 3d 824, 828 (¶11) (Miss. Ct. App. 2011). "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Dockery v. State*, 96 So. 3d 759, 763 (¶17) (Miss. Ct. App. 2012) (quoting *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. 2009)). The defendant must also be advised that a guilty plea waives various constitutional rights. *Hill*, 60 So. 3d at 828 (¶11). But of all of these safeguards, the most significant evidence of the voluntariness of a defendant's guilty plea is "[*t*]*he thoroughness with which the defendant was interrogated by the lower court*." *Id.* at (¶12) (emphasis added and citation omitted). We find this particularly true where a defendant, like Norris, claims during a plea hearing to having recently ingested drugs.

¶22. While Mississippi has not spoken about what a judge should do when a defendant claims during a plea hearing he has recently ingested drugs, the federal courts have. And we find the approach used by both the First and Third Circuits reasonable.

¶23. Those federal courts have held:

> Once the court "has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights, it must broaden its [plea]

8

inquiry with a view to assessing the impact of the ingested substances on the defendant's capacity to understand the change-of-plea process and intelligently determine a proper course of action."

*Carey v. United States*, 50 F.3d 1097, 1099 (1st Cir. 1995) (quoting *United States v. Parra-Ibáñez*, 936 F.2d 588, 595 (1st Cir. 1991)); *see also United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987). Our review shows this is just what the trial judge did in Norris's case.

### B. Plea Colloquy

¶24. Looking back to the plea hearing, the record shows that, just as court began, Norris told the judge he was unsure if he should accept the plea deal. He claimed he had swallowed some drugs the day before when officers placed him in custody on the warrant, and he was "messed up." There was some back-and-forth between him and the judge. And it was obvious the court was familiar with Norris, including his failure to show up for a previous hearing.

¶25. The judge had earlier in the day tried to get Norris to give a urine sample for a drug test, but Norris claimed he could not urinate. The court reminded Norris he was set to go to trial in two days. And if he wished to accept the State's plea offer, he must do so that day, in time to call the jury off. The judge broke proceedings, so Norris again could try to give a urine sample for a drug test. But the record does not show the sample was ever taken nor mention the test's results.

¶26. On appeal, Norris suggests the record's silence on the drug-test results, as well as his own silence when the judge asked if he was under the influence, renders his plea involuntary. But this suggestion ignores what the record *does show* happened when Norris returned after the brief recess and pled guilty to the two felony-eluding counts.

9

¶27.    The judge's plea colloquy with Norris was quite thorough.  It is obvious he took extra steps to assess the impact Norris's claimed drug ingestion had on his understanding of the hearing.  After review, we find the judge adequately probed Norris's mental state and exposed his state of mind on the record to ensure he knew what he was doing and had the capacity to voluntarily and knowingly enter the guilty pleas.

¶28.    When court resumed after the break, the judge immediately called court to order to proceed with Norris's guilty pleas.  The judge started with routine questions about Norris's age, social security number, and education, which Norris quickly and correctly answered.  But when the judge pointedly asked Norris if he was under the influence of drugs or intoxicants, Norris refused to respond.

¶29.    At this point, the judge asked Norris if he had done any drugs since his arrest the afternoon before,[5] and Norris said he had not.  The judge next inquired if Norris knew what he was doing, and Norris said, "Yeah, I guess.  Yes, sir."  Hearing this equivocal response, the judge made clear that Norris should not "guess,"—"[y]ou either know what you're doing or you don't[.]"

¶30.    The judge decided to make a record of the fact he had earlier asked Norris's parents to talk to him.  The judge, at this point, asked Norris's parents if they thought Norris knew what he was doing.  And Norris's father represented to the judge that he believed Norris knew.  After his dad spoke up, Norris himself admitted he knew what he was doing.  When asked if he understood "the charges pending against [him]," Norris said he did.  The State

---

[5]    From the record it appears approximately twenty-four hours had passed since Norris's claimed drug ingestion.

then read the two charges proposed in the plea agreement, described the facts and elements supporting both felony-eluding counts, and cited the underlying convictions supporting an enhanced sentence under section 99-19-81.[6] The State's recitation of the crimes takes up nearly four pages in the plea transcript.

¶31. After hearing the State's proposed evidence, Norris said he did not disagree with the prosecutor's factual basis. But he did have a question. His question dealt with the concurrent nature of his sentences for his prior robbery and attempted-robbery convictions. Once this issue was cleared up to Norris's satisfaction, he asked about facing a sentence under 99-19-83. And the court clarified that if he went to trial he faced life under the "big bitch"—section 99-19-83. But the proposed pleas his lawyer worked out called for sentencing under the "little bitch"—section 99-19-81. Norris said he understood.

¶32. When asked if he had committed the crimes the State described, Norris said, "Yes, sir, I did commit the attempted robbery and robbery. Yes, sir, I did." Norris also admitted committing the two eluding charges and that he had run from police. The judge informed Norris of the mandatory nature of the enhanced sentence, "which is five years on each count." Norris said he understood that too. Knowing "all of this," Norris expressed that he still wanted to plead guilty. He also maintained he understood he could not appeal a guilty plea.

### 1.    Confusion over the Assault Charge

---

[6] A guilty plea may be factually supported "by a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant." *Williams v. State*, 110 So. 3d 840, 843 (¶17) (Miss. Ct. App. 2013) (quoting *Turner v. State*, 864 So. 2d 288, 292 (¶17) (Miss. Ct. App. 2003)).

¶33. From the record, it appears Norris's earlier-mentioned confusion stemmed from his disagreement that he had assaulted a police officer. This was the charge for which he stood indicted and faced life imprisonment, but not the lesser crimes he was there to plead guilty to. As he put it, "it was hard for [him] to hold up for something[—the assault—]that [he] didn't do."

¶34. When the judge heard this, he quickly assured Norris, "I am not going to let you plead to something you didn't do. Do you understand that?" Norris said he did. The judge reemphasized this very point two more times, noting it was the State's burden to prove Norris was guilty. Norris told the judge, "I want to go ahead and take this plea for fleeing[,] eluding[,] because I did do that. I'm saying, I did. I did do that."

¶35. The judge assured Norris that the proposed guilty pleas were only to the eluding charges—"Two counts of felony eluding." The judge then specifically asked Norris, "are you pleading guilty to these two counts because you did them or not?" Norris said he wanted to plead guilty and that he understood the charges. To remove any potential uncertainty, the judge again made sure Norris appreciated that the pleas were only to felony eluding, not assault. And once more Norris said he understood.

¶36. Norris told the judge he was neither promised anything nor threatened or coerced to plead guilty. He said he also understood that, by pleading guilty, he was admitting he committed both eluding counts. The court then detailed the various rights Norris was waiving by pleading guilty.[7] The judge also described the State's burden of proof.

_____

[7] The judge ensured Norris was aware of the constitutional rights he stood to waive by entering a guilty plea—his right to a jury trial, his right against self-incrimination, his

### 2. *Additional Questioning of Attorney, Father, and Norris*

¶37. At this point, the judge called on Norris's attorney. He asked him if, after talking to Norris and observing him that day, he saw "anything that would lead [him] to believe he's presently under the influence of drugs or intoxicants." The attorney responded, "No, Your Honor, not at the moment." From the attorney's conversations with Norris, he believed Norris fully understood what he was doing. After that, the judge again called on Norris's father, Thomas T. Norris. Thomas represented to the court that he too believed his son knew what he was doing. The court then returned to Norris's lawyer, this time asking if he knew of "any reason" Norris's guilty plea should not be accepted. The lawyer said no.

¶38. The colloquy then shifted to Norris. The judge probed him about his interaction with his lawyer. And Norris said he was satisfied with his attorney. He admitted he and his lawyer had gone over both plea petitions and signed them. To be sure Norris appreciated the jail time he faced, the judge further tested Norris. He asked him if he understood "what's contained in these petitions." And Norris correctly responded, "Yes, five mandatory on each count. There's two counts. Ten years mandatory." Norris also admitted everything in the plea petitions was true and correct.

¶39. Before the hearing ended, the judge said, "Mr. Norris, I have attempted to question you thoroughly about your plea of guilty to be satisfied you're fully acquainted with all your Constitutional rights. Do you still wish to plead guilty?" Norris said, "Yes, yes, sir." The court followed up and asked Norris, "Is there anything else you wish to say . . . or any

---

right to  cross-examine and confront witnesses, and his right to testify in his own defense.

13

evidence you wish this court to hear before sentence of law is passed upon you?" Norris said, "No, sir."

¶40. Having scrutinized Norris's ability to understand the nature of the plea proceedings, the rights he was giving up, and the consequences of pleading guilty, the judge made an express finding that the factual basis was sufficient. He also found Norris's guilty pleas were "intelligently, knowingly, understandably, freely, and voluntarily made." The court then adjudicated Norris guilty on each count and sentenced him as a habitual offender to the required five mandatory consecutive years on each eluding count.

### C. Judge's Finding of Voluntariness

¶41. After review, we find the judge carefully developed a record of Norris's state of mind. His pointed questioning at the plea hearing, which certainly took the assertion of recent drug use into account, was aimed at probing Norris's awareness of the proceedings and consequences of his guilty pleas. *See Carey*, 50 F.3d at 1099; *Cole*, 813 F.2d at 46. Though Norris initially claimed he was impaired, the judge satisfied himself through the detailed colloquy that Norris knew what he was doing. And Norris himself admitted under oath that he understood the plea deal, the sentences he faced, the facts supporting the eluding charges, and the rights he was waiving, yet he still wanted to plead guilty. Such sworn representations by a defendant in open court "carry a strong presumption of verity." *Jones v. State*, 949 So. 2d 872, 873 (¶3) (Miss. Ct. App. 2007) (citing *Gable v. State*, 748 So. 2d 703, 706 (¶11) (Miss. 1999)). And we cannot say Norris has overcome this presumption.

¶42. When a judge "exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness,

14

but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." *McCarthy v. United States*, 394 U.S. 459, 467 (1969). After our review of this plea colloquy, we cannot say the trial judge wrongly found Norris's plea was voluntary. Nor can we find the judge clearly erred in later denying Norris's PCR motion.

## Conclusion

¶43. The burden was with Norris, not the State, to prove he was entitled to post-conviction relief. Yet Norris's PCR motion did not even allege a voluntariness claim. And when he was granted a PCR hearing, Norris neither testified about his claimed impairment nor called other witnesses or offered any evidence to prove his plea was involuntary. We find no clear error in the judge's denial of Norris's PCR motion. Thus, we affirm.

¶44. **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**