# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00313-COA

**THOMAS ROBY**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:               01/26/2018
TRIAL JUDGE:                    HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:      CLAY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         THOMAS ROBY (PRO SE)
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: LAURA HOGAN TEDDER
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                    AFFIRMED - 06/18/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     Thomas Roby pleaded guilty to two counts of armed robbery.  For each count, the trial court sentenced Roby to twelve years in the custody of the Mississippi Department of Corrections, with seven years to serve and five years of post-release supervision; the sentences were to run concurrently.  Roby, appearing pro se, filed a motion for post-conviction relief (PCR), which the trial court dismissed.  On appeal, Roby argues that his guilty plea was involuntary and had no factual basis.  Finding no error, we affirm the dismissal of his PCR motion.

## FACTS

¶2.     In April 2012, a Clay County grand jury indicted Roby for two counts of armed

robbery. In March 2015, Roby, through counsel, filed a notice of an alibi defense, in which he alleged that on April 15, 2007—the date of the armed robberies—he had met with his probation officer in Illinois.

¶3. After several agreed continuances, Roby's trial was set for July 25, 2016; however, on that day, Roby failed to appear in court. A bench warrant was issued for his arrest. The next day, Roby's counsel filed a motion for continuance. He explained that on July 25, 2016, Roby had reported to Baptist Memorial Hospital in Columbus, Mississippi, and was physically unable to participate in his trial. Roby did appear, however, at the courthouse on July 26, having been released from the hospital the previous day. The State was prepared to go forward with trial, having subpoenaed witnesses who were present and ready to testify against Roby. With the jury set to return at 1:30 p.m. to commence trial proceedings, Roby decided to change his plea to guilty.

¶4. A plea hearing ensued. The trial judge questioned Roby in detail about his plea and discussed at length the ramifications of his pleading guilty. Roby stated under oath that his attorney had explained the plea petition and that he understood it, as well as what the State had to prove to convict him. Roby admitted that he did have a defense to the charges and had spoken to his attorney about that defense. He also admitted that he understood the many rights he was waiving by entering a guilty plea. Roby admitted that he had received several threats to plead guilty but that the threats were not why he was pleading guilty. Additionally, when the trial judge questioned Roby about whether he was under the

influence of any illegal drugs or alcohol, Roby admitted that he was "under methadone,"[1] which he had been given at the hospital in Columbus the day before, but he denied any addiction to opiates:

> Q.    Today, are you under the influence of any illegal drugs or alcohol or undergoing any kind of mental treatment at this time?
>
> A.    Yes.  I'm under [m]ethadone.
>
> Q.    So, you have an addiction to opiates?
>
> A.    No.  Not at all.  That is what Columbus gave me in Columbus [sic].
>
> Q.    It looks like Aleve, [m]orphine?
>
> A.    Methadone.
>
> Q.    Yesterday?
>
> A.    Perhaps.
>
> Q.    Okay.  Do you understand what's going on?
>
> A.    Yes.

The State then declared that it would show Roby exhibited a gun to the two victims, putting them in fear, and as a result Roby received money.  The trial judge then asked Roby "is that what happened, what really happened?"  Roby responded:

> A.    I don't know what to say to be honest with you.

---

[1] In the record, Roby uses the terms "methadone" and "morphine" interchangeably. At the plea hearing, he stated he was "under methadone," but at the sentencing hearing and in his appellate brief, he used the term "morphine."  Both drugs are known pain relievers.

Q.      Well, what the State is offering the proof that you exhibited a firearm to Mr. White and Mr. Hogan. As a result, they gave you money as a result of this firearm?

A.      That's true, sir. I know I'm on record, but that's not true. I'm just proving . . . .

The trial judge then explained that Roby could not plead guilty to a crime to which he was not guilty. Roby's counsel then requested the court allow Roby to enter a "best interest" plea based on the evidence before the court. Roby again conferred with his counsel, and decided it was in his best interest to plead guilty because of the evidence against him, and did so. His counsel testified he and Roby had reviewed the discovery and possible testimony. The trial judge noted that although Roby was going to present an alibi defense about meeting with his probation officers in Illinois, the State had present a supervisor from the Illinois Department of Corrections who would testify Roby did not check in on the date of the armed robbery. The trial judge then concluded that Roby knowingly and voluntarily entered his guilty plea and allowed him to be released on bond for a week while awaiting his sentencing hearing.

¶5.     Not surprisingly, before being sentenced at the hearing on August 5, 2016, Roby made an oral motion through his attorney to withdraw his guilty plea, arguing that he had unknowingly entered his plea on July 26 because he was under the influence of morphine. Roby stated that he was not in his "right state of mind" when he took the plea deal and that he was innocent. The trial judge was aware of a "medical excuse" entered in his file. The trial judge stated it was within his discretion to allow Roby to withdraw his plea. However,

4

the trial judge recalled that Roby's demeanor during his plea hearing was appropriate—the trial court spoke to him "at great length," and there was nothing to indicate Roby did not understand his plea. The trial judge recalled that Roby was "quite aware" of the proceedings, and "not a dumb person." Further, Roby answered all of the court's questions satisfactorily. Accordingly, Roby's request to set aside his guilty plea was denied, and the trial court proceeded with sentencing.

¶6.     After receiving his sentence, Roby again maintained his innocence, claiming there was no evidence against him. The trial judge reminded Roby he declined the opportunity to be tried by a jury of his peers. Roby then explained his medical issues on July 25: he was having heart trouble; it felt like he was "getting stabbed in [the] chest." Initially, he went to the Clay County Medical Center, but they discharged him. Still in pain, Roby went to the emergency room at the Baptist Hospital in Columbus, where he was given an EKG, IVs, and "too much morphine." Roby claimed they discharged him because he had "to come to court." Roby stated the morphine made him sluggish and unable to function properly on July 26. The trial judge responded that the hospital would not have let him go if he were going to have a heart attack, and found Roby "did enough doctor shopping on the day of trial . . . to get it continued"—a strategy he had seen defendants use numerous times. Further, the trial judge again stated he carefully observed Roby the day of his plea hearing and "[he] was fine." Roby then informed the court he was firing his lawyer so he could hire another one. The trial judge suggested Roby's new counsel file a PCR motion.

5

¶7. Accordingly, on March 7, 2017, Roby, appearing pro se, filed a motion for post-conviction relief raising seven issues. He claimed there was no factual basis for the plea, his sentence was illegal, his indictment was void, his counsel was ineffective, and he was denied a speedy trial. The trial court entered an order discussing each issue but ultimately dismissed Roby's PCR motion. Roby timely appealed, raising issues related only to his guilty plea.

## STANDARD OF REVIEW

¶8. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Gunn v. State*, 248 So. 3d 937, 941 (¶15) (Miss. Ct. App. 2018) (quoting *Berry v. State*, 230 So. 3d 360, 362 (¶3) (Miss. Ct. App. 2017)).

## DISCUSSION

¶9. Roby claims that his right to due process was violated because he entered a guilty plea involuntarily and that there was no factual basis for his plea. We shall discuss each of Roby's arguments in turn.

### 1. Involuntary Plea

¶10. Rule 8.04(A)(3) of the Uniform Rules of Circuit and County Court formerly provided that "[b]efore the trial court may accept a plea of guilty, the court must determine that the

plea is voluntarily and intelligently made and that there is a factual basis for the plea."[2] "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. 2009). The PCR petitioner, not the State, "bears the burden of proving by a preponderance of evidence that the guilty plea was involuntary." *Norris v. State*, 162 So. 3d 833, 837-38 (¶20) (Miss. Ct. App. 2014) (citing *House v. State*, 754 So. 2d 1147, 1152 (¶25) (Miss. 1999)).

¶11.    Roby argues that his plea was involuntary because he was given morphine at the hospital the day before pleading guilty, and thus was "not in his right mind" and did not understand the proceedings. After carefully reviewing the record and transcript of both the plea and sentencing hearings, we are not persuaded by Roby's claim. The trial judge, at the sentencing hearing, made detailed remarks about Roby's mental status during the plea hearing, finding he was "very aware" of the proceedings, especially after Roby stated he was given "methadone" at the hospital the day before.[3] Moreover, at the plea hearing, Roby declared he understood the proceedings. The transcript does not indicate he was impaired. He testified under oath that his attorney had reviewed the plea petition with him and he understood it. After the trial judge explained at length the plea petition and the rights he

---

[2] The Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017; however, the former rules were still in effect at the time of Roby's guilty plea.

[3] We note, however, that Roby offered no medical records that he was actually given morphine at the hospital the prior day; he merely offered a medical excuse.

7

would waive, Roby stated he understood the ramifications of pleading guilty. These statements, made in open court, "carry a strong presumption of veracity." *Thomas v. State*, 159 So. 3d 1212, 1216 (¶12) (Miss. Ct. App. 2015). This argument is without merit.

### 2. Factual Basis of the Plea

¶12. To establish a factual basis for a guilty plea, the trial court must have before it "substantial evidence that the accused did commit the legally defined offense to which he is offering the plea." *Burrough*, 9 So. 3d at 373 (¶14) (quoting *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991)). The facts which must be shown depend on the crime and its elements. "There are numerous ways by which the facts may be found, but what ultimately is required is 'there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged.'" *Id.* A factual basis can be established by "a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, or an actual admission by the defendant." *Borden v. State*, 122 So. 3d 818, 823 (¶18) (Miss. Ct. App. 2013).

¶13. Roby argues there was an insufficient factual basis for his plea; however, the State presented the following factual basis:

> [T]he State would show on the date set out in the indictment this defendant used a weapon, a gun. One incident . . . with two victims in the case. He exhibited the gun and received the money. As a result of the gun being exhibited putting them in fear from both victims.

This testimony is a sufficient factual basis to meet all of the elements of robbery for both victims. Furthermore, although Roby later claimed innocence to the charges, a guilty plea

8

waived his right to challenge the State's evidence, as was explained to him at the plea hearing. This issue is without merit.

¶14.    Finding the trial court did not err in dismissing Roby's PCR motion, we affirm the judgment.

¶15.    **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**