# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00634-COA

**DANIEL WILLIAMSON A/K/A DANIEL LARRY WILLIAMSON A/K/A DANIEL L. WILLIAMSON**  APPELLANT

v.

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT: 04/17/2017
TRIAL JUDGE: HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED: NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: DANIEL WILLIAMSON (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: SCOTT STUART
NATURE OF THE CASE: CIVIL - POSTCONVICTION RELIEF
DISPOSITION: AFFIRMED - 06/05/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Daniel Williamson pleaded guilty to one count of manslaughter and one count of arson. The Neshoba County Circuit Court accepted Williamson's guilty plea and sentenced him to serve twenty years in the custody of the Mississippi Department of Corrections for his manslaughter conviction and twenty years for his arson conviction, with the sentences to run consecutively, for a total of forty years to serve.

¶2. Williamson filed a motion for postconviction relief (PCR), which the trial court dismissed as a successive writ, duplicitous request, and lacking merit. Williamson now appeals, arguing that the State failed to meet its burden of proving that Williamson

committed a crime. Finding no error, we affirm the trial court's dismissal of Williamson's

PCR motion as a successive writ. *See* Miss. Code Ann. § 99-39-23(6) (Rev. 2015).

**FACTS**

¶3. In May 2013, a Neshoba County grand jury indicted Williamson with one count of murder and one count of arson stemming from the death of Williamson's girlfriend, Terri Gwyn.

¶4. During Williamson's trial held on November 11, 2013, the trial court heard testimony from four witnesses for the State: Terry Cremeen, Williamson's coworker; Tiffany Miller, Gwyn's close friend; Ralph Sciple, chief investigator for the Neshoba County Sheriff's Department; and Pete Adcock, a deputy at the State Fire Marshal's office.

¶5. Cremeen testified that on the morning of March 2, 2013, he arrived at Williamson's trailer to give him a ride to work. Williamson was waiting outside of his trailer holding a box of moonshine. Cremeen testified that Williamson put the moonshine in the back of Cremeen's truck and told Cremeen that he needed to go back inside to get his lunch box. After about ten minutes, Williamson came back outside carrying a cooler and got into Cremeen's truck. Cremeen testified that as he backed up to leave, he observed flames coming from the bedroom of the trailer. Cremeen yelled at Williamson to call 911, and he asked Williamson if anyone was inside of the trailer. Williamson answered "Yes. My old lady."

¶6. Tiffany Miller testified that Gwyn and Williamson lived together in a trailer and were in a romantic relationship. According to Miller, Gwyn called her a little over a week before

2

the fire and informed her that she and Williamson had gotten into a fight. Gwyn told Miller that she had made plans to move out of the trailer and back to North Carolina, but she did not want Williamson to know. Miller stated that a few days before the fire, she went over to the trailer to help Gwyn pack. Gwyn told Miller that she planned to leave on Saturday, March 2, 2013, after Williamson left for work.

¶7. Investigator Sciple testified that on March 2, 2013, he received a call to assist on a fire investigation at Williamson's trailer. When he entered the trailer, Investigator Sciple stated that he observed three or four suitcases in the living room, "like somebody was either mov[ing] in or fixing to leave." Investigator Sciple testified that when he entered the bedroom, "[t]here was a body still on the bed," and he described the body as "burnt beyond recognition." Investigator Sciple stated that he found a purse in the living room, next to the suitcases, containing Gwyn's driver's license. However, he admitted that he "still could not identify the person that was on the bed."

¶8. Investigator Sciple testified that after his investigation of the scene, he determined the cause of the fire to be arson. Investigator Sciple stated that the fire originated on the bed in the bedroom, and an accelerant was used to make the material burn faster. Investigator Sciple stated that through the course of his investigation, he learned that the owner of the trailer was renting the property to Gwyn.

¶9. Deputy Adcock also testified that the fire originated in the bedroom. Deputy Adcock specified that the fire started on the bed, and that whoever started the fire used an accelerant.

¶10. At the conclusion of Deputy Adcock's testimony, the transcript reflects that

Williamson expressed his desire to enter a guilty plea. The trial court then adjourned the trial and held a guilty plea hearing that afternoon.

¶11.  At Williamson's guilty plea hearing, the trial court asked Williamson if he was "pleading guilty to killing this lady that's involved in this case." Williamson answered, "Yes, sir." The trial court also asked Williamson if he was pleading guilty to "[b]urning [the] trailer while she was an occupant of the trailer." Williamson again answered, "Yes, sir." The trial court accepted Williamson's guilty plea to one count of manslaughter and one count of arson and sentenced him to twenty years in the custody of the MDOC for manslaughter and twenty years in the custody of the MDOC for arson.

¶12.  On September 29, 2015, Williamson filed a petition to show cause, in which he alleged that the trial court was denying him due process by failing to furnish him with a copy of the record in his case. On October 14, 2015, Williamson filed a motion to amend his petition to show cause or to clarify his demands. In his amended motion, Williamson attacked the validity of his guilty plea and his conviction.

¶13.  On November 18, 2015, the trial court, treating Williamson's filing as a PCR motion, entered an order denying Williamson relief. In its order, the trial court stated that it had denied two prior PCR motions filed by Williamson and therefore found Williamson's motion to be "a successive writ and a duplicitous request."

¶14.  On April 7, 2016, Williamson filed another PCR motion, this time raising six grounds for relief. The trial court entered an order on April 17, 2017, denying relief and dismissing Williamson's motion. The trial court held that Williamson's current PCR motion was

4

procedurally barred as a successive writ, explaining that Williamson had sought postconviction relief "on at least three prior occasions" and been denied. After acknowledging that Williamson's PCR motion was procedurally barred, the trial court also found that Williamson's claims of error lacked merit.

¶15. On May 10, 2017, Williamson filed his notice of appeal.

## STANDARD OF REVIEW

¶16. When reviewing a trial court's denial of a PCR motion, "we review the trial court's findings of fact for clear error and its determinations of law de novo." *Wilkerson v. State*, 89 So. 3d 610, 613 (¶7) (Miss. Ct. App. 2011). The petitioner bears the burden of showing he is entitled to relief by a preponderance of the evidence. *Shavers v. State*, 215 So. 3d 502, 505 (¶7) (Miss. Ct. App. 2016).

## DISCUSSION

¶17. In his PCR motion before the trial court, Williamson raised six grounds for relief. However, in his appellate brief, Williamson only raises one assignment of error—the State failed to meet its burden of proof to show that he committed a crime. Williamson specifically claims that "the record is bare of any showing of corpus delecti." In support of his assertion, Williamson argues that the State failed to present any testimony or evidence that established the identification of the body found in the trailer, whether the person found in the bed was even deceased, or the cause of death.

¶18. Williamson's appeal contains several procedural issues. The first procedural issue before us involves Williamson's assignment of error on appeal. In his PCR motion filed in

the trial court, Williamson asserted the following assignments of error: (1) his multi-count indictment is illegal; (2) he was denied the right to a jury trial; (3) no factual basis existed for the trial court to accept his guilty plea for arson; (4) the trial court abused its discretion by stopping Williamson's trial and thus subjected Williamson to double jeopardy; (5) the trial court erred by allowing multiple punishments growing out of the same set of operative facts; and (6) ineffective assistance of counsel. On appeal, the only issue that Williamson raises is that the State failed to meet its burden of proof to show that Williamson committed a crime. Williamson failed to raise this issue in his PCR motion before the trial court, and he cannot raise it for the first time on appeal. *Fluker v. State*, 17 So. 3d 181, 183 (¶5) (Miss. Ct. App. 2009) ("[A] defendant who fails to raise an issue in his [PCR motion] before the trial court may not raise that issue for the first time on appeal.").[1] We also find that Williamson has abandoned the six issues presented in his PCR motion before the trial court. *Id*. at 182-83 (¶4) ("Issues that are unsupported and not argued are abandoned and need not be considered on appeal.").

¶19. The State appears to interpret Williamson's claim on appeal as an attack on whether a factual basis existed for the trial court to accept Williamson's guilty plea, and the State bases its argument on appeal around this claim. In his PCR motion before the trial court, Williamson did raise the issue of whether a factual basis existed for the trial court to accept his guilty plea for arson. However, Williamson's argument on appeal is entirely different.

---

[1] In his appellate brief, Williamson also makes a vague suggestion that he was arrested without probable cause. However, this argument did not appear in his PCR motion before the trial court, and, as stated, Williamson cannot raise it for the first time on appeal. *Id*. at 183 (¶5).

In fact, in his appellate brief, Williamson fails to mention that he pleaded guilty. We recognize that in his reply brief, Williamson responds to the State's argument that a factual basis existed for the trial court to accept Williamson's guilty plea, but Williamson then directs his argument back to whether the State met its burden of proof.

¶20. By pleading guilty, Williamson waived his right to have the State prove each element of the offense beyond a reasonable doubt. *Joiner v. State*, 61 So. 3d 156, 158 (¶7) (Miss. 2011). The record reflects that, on appeal, Williamson does not challenge the validity of his guilty plea. Furthermore, Williamson's assertion on appeal that the State failed to meet its burden of proof lacks merit.

¶21. Second, we recognize that in its order dismissing Williamson's PCR motion, the trial court held that the motion was barred as a successive writ. The Uniform Postconviction Collateral Relief Act (UPCCRA) imposes a bar against successive writs. *See* Miss. Code Ann. § 99-39-23(6) (Rev. 2015) ("[A]ny order dismissing the petitioner's motion or otherwise denying relief under this article is a final judgment and shall be conclusive until reversed. It shall be a bar to a second or successive motion under this article."). However, the UPCCRA provides an exception to the successive-writ bar if the petitioner can show:

> [T]hat there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked. Likewise excepted are those cases in which the petitioner has filed a prior petition and has requested DNA testing under this article,

7

provided the petitioner asserts new or different grounds for relief related to DNA testing not previously presented or the availability of more advanced DNA technology.

*Id*.

¶22.    We recognize that errors affecting fundamental rights are also excepted from the UPRCCA's procedural bars. *Fluker v. State*, 170 So. 3d 471, 475 (¶11) (Miss. 2015). "Only four fundamental-rights exceptions have been expressly found to survive procedural bars: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws." *Carter v. State*, 203 So. 3d 730, 731 (¶7) (Miss. Ct. App. 2016).  The Mississippi Supreme Court has clarified that "merely asserting a constitutional-right violation is insufficient to overcome the procedural bars." *Fluker*, 170 So. 3d at 475 (¶11).  Additionally, "there must at least appear to be some basis for the truth of the claim of a fundamental-constitutional-rights violation." *Evans v. State*, 115 So. 3d 879, 881 (¶3) (Miss. Ct. App. 2013) (internal quotation marks omitted).

¶23.    In the trial court's order denying Williamson's April 2016 PCR motion, the trial court explained that Williamson had filed approximately three prior PCR motions, all of which the trial court denied.  The record before us contains only one other prior PCR motion filed by Williamson — an October 2015 motion titled "Motion to Amend Petition to Show Cause or to Clarify Petitioner's Demands."  In this motion, which the trial court treated as a PCR motion, Williamson asserted arguments similar to those set forth in his April 2016 PCR motion; namely, that the trial court lacked a factual basis to accept his guilty plea, the trial

8

court abused its discretion by stopping Williamson's trial and therefore subjected him to double jeopardy, and ineffective assistance of counsel. The record reflects that in November 2015, the trial court entered an order denying relief, explaining that Williamson "ha[d] twice been denied post[]conviction relief by this [c]ourt," and therefore his October 2015 PCR motion constituted "a successive writ and a duplicitous request."

¶24. Our review of Williamson's April 2016 PCR motion presently at issue before this Court also reflects that Williamson failed to show that his constitutional-rights-violations claims possessed any merit; accordingly, Williamson's successive and duplicitous claims do not survive the procedural bars of the UPCCRA. *Fluker*, 170 So. 3d at 475 (¶11).

¶25. After our review of the record, we affirm the trial court's dismissal of Williamson's PCR motion as a successive writ.

¶26. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**