# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01241-COA

ADRIAN HUGHES      APPELLANT

v.

STATE OF MISSISSIPPI      APPELLEE

DATE OF JUDGMENT: 10/04/2021
TRIAL JUDGE: HON. JOHN R. WHITE
COURT FROM WHICH APPEALED: LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: ADRIAN HUGHES (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: ALEXANDRA RODU ROSENBLATT
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED - 05/09/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.   Adrian Hughes appeals the denial of his motion to vacate the revocation of his post-release supervision and imposition of suspended sentences for convictions of burglary of a dwelling and larceny. On appeal, Hughes argues that the circuit court erred by revoking his post-release supervision for absconscion and sentencing him to concurrent terms of ten and eight years in custody. Hughes claims that the court instead should have sent him to a technical violation center. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.   On December 1, 2011, Hughes pled guilty to one charge of burglary and larceny of a dwelling in the Lee County Circuit Court (Cause No. CR11-033). The circuit court

sentenced him to a total of twenty years in the custody of the Mississippi Department of Corrections (MDOC), with seventeen years suspended and three years to serve, and five years of post-release supervision (PRS). The following year, on May 15, 2012, Hughes pled guilty to a separate charge of burglary and larceny of a dwelling in the Lee County Circuit Court (Cause No. CR12-038). The circuit court sentenced him to a total of twenty years in MDOC's custody, with twelve years suspended and eight years to serve, and five years of PRS. This sentence was ordered to run concurrently with his 2011 sentence. The record indicates that Hughes was released on PRS for both the 2011 and 2012 sentences in March 2017.

¶3. Subsequent to his placement on PRS, the State filed a motion to revoke his suspended sentences because Hughes had failed to report to MDOC since September 12, 2019. The circuit court held a revocation hearing on October 7, 2020, during which Hughes was present and testified on his own behalf. During the course of his testimony, Hughes admitted that as of the day of his hearing, he had not reported in over a year, and he did not have an excuse for this failure. Following the hearing, the circuit court found that Hughes had failed to report to MDOC as directed since September 2019 and failed to pay supervision fees to MDOC and court-ordered assessments to the Lee County Circuit Court. In addition, the court found he was in violation for failing to remain in a specified area following a home visit where an MDOC agent discovered he was not living at the address he provided for a significant amount of time. Based on these collective findings, the court revoked his PRS and sentenced him to serve ten years of his remaining sentence for the 2011 conviction and to serve eight

years of his remaining sentence for the 2012 conviction, with both sentences ordered to run concurrently and be followed again by post-release supervision.

¶4. On July 20, 2021, Hughes filed his first motion for relief from the orders, specifically titled as a "Petition to vacate revoked P.R.S. sentences and be properly sanctioned to a T.V.C." He requested that the court vacate the sentences implemented after his PRS was revoked and send him to a technical violation center (TVC) instead. In essence, he claimed that his suspended sentences were prematurely imposed because he had not yet received any technical violations sanctions, and therefore the remainder of his suspended sentence could not be imposed. The record indicates that the circuit court treated Hughes's July 2021 filing as a motion for post-conviction collateral relief (PCR). On August 12, 2021, the court entered an order denying his motion.[1] The court determined that Hughes's PRS "was revoked due to Defendant's absconsion for more than one (1) year," and under Mississippi Code Annotated section 47-7-37 (Supp. 2018), when "a person under post-release supervision has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence."

¶5. Subsequently on September 3, 2021, Hughes filed (1) a motion to voluntarily dismiss his July 20 motion and (2) a "petition to vacate revoked P.R.S. sentences and be properly sanctioned to a T.V.C. with time served, same as *White v. State*, 311 So. 3d 1278 (2021)."

---

[1] "It is well established that 'a pleading cognizable under the Uniform Post-Conviction Collateral Relief Act (UPCCRA) will be treated as a PCR motion that is subject to the procedural rules promulgated therein, regardless of how the plaintiff has denominated or characterized the pleading.'" *Pickle v. State*, 351 So. 3d 464, 466 (¶4) (Miss. Ct. App. 2022) (quoting *Nance v. State*, 327 So. 3d 1089, 1092-93 (¶14) (Miss. Ct. App. 2021)).

On October 1, 2021, the circuit court denied Hughes's September 3 motion to dismiss on the ground that it was moot because it was filed after the circuit court had already issued its ruling. Further, the circuit court denied the September 3 petition to vacate on the ground that it was without merit because the holding in *White*[2] did not apply to the terms of Hughes's revocation. Hughes appeals.

## STANDARD OF REVIEW

¶6. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous[.]" *Alexander v. State*, 335 So. 3d 577, 580 (¶6) (Miss. Ct. App. 2021). This Court will affirm the "denial[] of PCR motions when the movant fails to demonstrate 'a claim procedurally alive substantially showing the denial of a state or federal right.'" *Shavers v. State*, 215 So. 3d 502, 505 (¶7) (Miss. Ct. App. 2016) (quoting *Borden v. State*, 122 So. 3d 818, 821 (¶7) (Miss. Ct. App. 2013)). Furthermore, "[i]t is well-settled law that on appeal this Court may affirm a circuit court's ruling for different reasons than those offered by the circuit court." *Dunaway v. State*, 111 So. 3d 117, 119 (¶10) (Miss. Ct. App. 2013).

## DISCUSSION

¶7. On appeal, Hughes claims as his first assignment of error that the October 7, 2020 orders of revocation and sentencing are ambiguous and must be reversed and the matters remanded for new sentencing proceedings. Hughes did not present this claim to the circuit court, however, and raises this issue for the first time on appeal. "[I]ssues raised for the first

---

[2] *White v. State*, 311 So. 3d 1278 (Miss. Ct. App. 2021).

4

time on appeal are procedurally barred from review as they have not first been addressed by the trial court." *Bland v. State*, 312 So. 3d 417, 419 (¶11) (Miss. Ct. App. 2021) (quoting *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002)). Thus, Hughes's initial claim regarding ambiguous sentencing orders is barred from our review and denied.

¶8. Hughes's remaining issue on appeal from the denial of his September 3 request for relief (i.e., his second PCR motion) is his claim that the circuit court erred by improperly revoking his PRS. He argues that the circuit court revoked his PRS in a manner contrary to the law found in *White* and Mississippi Code Annotated section 47-7-37. Ultimately, the relief that Hughes seeks on appeal is the reversal of the October 7, 2020 revocation and imposition of his suspended sentences for his 2011 and 2012 convictions.

¶9. "The UPCCRA provides 'an exclusive and uniform procedure for the collateral review of convictions and sentences.'" *Tallant v. State*, 345 So. 3d 575, 584 (¶20) (Miss. Ct. App. 2021) (quoting Miss. Code Ann. § 99-39-3(1) (Rev. 2020)). The UPCCRA "bars PCR motions from this Court's review if the movant has filed a previous PCR motion." *Porter v. State*, 281 So. 3d 935, 938 (¶12) (Miss. Ct. App. 2019); *accord* Miss. Code Ann. § 99-39-23(6) (Rev. 2020). Nevertheless, "the UPCCRA provides an exception to the successive-writ bar . . . [for] those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked." *Williamson v. State*, 269 So. 3d 421, 425 (¶21) (Miss. Ct. App. 2018) (quoting Miss. Code Ann. § 99-39-23(6) (Rev. 2015)). As this Court explained in *Gray v. State*, 269 So. 3d 331, 336 (¶18) (Miss. Ct. App. 2018), however,

[w]e do not find that the exception in section 99-39-23(6) allows an inmate to relitigate the issue that was already decided. To the contrary, we have previously stated, the exceptions under . . . [s]ection 99-39-23(6) only allow the filing of a successive writ if the argument presented within the writ falls under one of the exceptions and has not been previously argued and a decision rendered on the merits by the trial court.

"[A]n issue that has been addressed in a final judgment with specific findings of facts and conclusions of law may not be raised again by a PCR movant." *Thomas v. State*, 291 So. 3d 822, 824 (¶5) (Miss. Ct. App. 2020). In other words, "an appellant is granted one bite at the apple when requesting post-conviction relief." *Bridges v. State*, 349 So. 3d 181, 185 (¶8) (Miss. Ct. App. 2022).

¶10. Here, Hughes's second PCR motion is barred because the circuit court previously addressed Hughes's argument that his PRS was unlawfully revoked and that his sentences were illegal in his first PCR motion titled as a "Petition to vacate revoked P.R.S. sentences and be properly sanctioned to a T.V.C." In this first PCR motion, he claimed that the court erred when it revoked his PRS and prematurely imposed his suspended sentences. This initial PCR motion noted that he did not have any prior technical violations while on PRS and specifically referenced "*White v. State* (MS. 2021) No. 2020-CP-00537-COA."[3] In summary, this first PCR motion alleged that he was serving an "illegal suspended sentence" because he believed he should have received a TVC sanction before the remainder of his suspended sentence could be imposed by the court.

¶11. In Hughes's second PCR motion, filed on September 3, 2021, the issue he raised was

---

[3] The proper citation for this case is *White v. State*, 311 So. 3d 1278 (Miss. Ct. App. 2021).

"[w]hether Justice John R. White abuse[d] his di[s]cretion when [he] ordered the revoking [of] Post-Release Supervision and imposition of sentence same as *White v. State*, 311 So. 3d 1278 (2021)." He again argued that his actions were only his first technical violation and that "the court shall impose[] a period of imprisonment to be served in either a TVC or a restitution center" based on the holdings in *White*. In denying this second PCR motion, the circuit court found that *White* did not apply to the facts and circumstances of Hughes's case. The court further noted that in his testimony Hughes admitted that he had not reported to MDOC in the year preceding the hearing. Specifically, Hughes testified, "I drive trucks, I'm on the road five, six days a week. I just didn't go. I ain't go no excuse for it. I just . . . I never did swing by there."

¶12.    Hughes's appeal in this case is similar to the facts and circumstances in *Lyons v. State*, 990 So. 2d 262 (Miss. Ct. App. 2008). After the circuit court revoked Lyons's probation, he filed his first PCR motion and argued that his probation had been unlawfully revoked and that his post-revocation sentence exceeded statutory limits. *Id*. at 263 (¶5). The court denied the PCR motion, and Lyons did not appeal. *Id*. Rather, Lyons filed a second motion in the trial court in which he again claimed his sentence exceeded the statutory limits. *Id*. The circuit court treated the motion as a second PCR motion and denied Lyons's claims, finding the motion barred as successive. *Id*. at 264 (¶9)

¶13.    The *Lyons* Court stated, "While section 99-39-23(6) does contain an exception for an inmate whose probation was unlawfully revoked, Lyons initially asserted the same claim in his first post-conviction-relief motion." *Id*. at (¶12). "Lyons argued the same issue in his first

7

PCR motion, and it was denied. He has not had any probation revoked since the order denying his first motion became final; therefore, he does not have a new claim that his probation was unlawfully revoked." *Id.* at 265 (¶14). Because "[t]he circuit court addressed the issue when it entered an order denying Lyons's first post-conviction-relief motion," and the order denying his first motion "for post-conviction relief was a final judgment from which he did not file an appeal[,]" the court's findings in the first order are conclusive. *Id.* 264-65 (¶12).

¶14. Here, the circuit court did not err when it denied his second motion for relief. Hughes's claim that his PRS was unlawfully revoked and his suspended sentences were improperly imposed was "barred because he asserted the same claim in his first [PCR] motion, which the circuit court denied, and from which he never appealed." *Id.* at 264 (¶11). Hughes's repetitive argument pointing to the law in *White* simply re-urges his original claim that his PRS was unlawfully revoked. Therefore, the circuit court did not err when it denied Hughes's September 3 requests for relief.

## CONCLUSION

¶15. Hughes claims that his PRS was unlawfully revoked and that his suspended sentences were improperly imposed as successive and procedurally barred. Hughes failed to assert a new claim for relief that was not previously adjudicated. We therefore affirm the circuit court's order denying Hughes's second PCR motion and other relief.

¶16. **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ.,**

8

**CONCUR.**